IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BASSEL KHORCHID,<br><br>        Plaintiff,<br><br>   v.<br><br>7-ELEVEN, INC.,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>18-8525 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Ahmed M. Soliman, Esq.
SOLIMAN & ASSOCIATES, P.C.
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
    Attorney for Plaintiff

Dennis R. Callahan, Esq.
WARD GREENBERG HELLER & REIDY LLP
1853 Market Street
Suite 650
Philadelphia, PA 19103
    Attorney for Defendant

**SIMANDLE**, District Judge:

# I.  Introduction

This case arises over alleged violations of two franchise agreements entered into between Plaintiff Bassel Khorchid (hereinafter, "Plaintiff") and 7-Eleven, Inc. (hereinafter, "Defendant"). Plaintiff alleges that Defendant violated the franchise agreements entered into in May 2009 and October 2016 (Plaintiff's Complaint (hereinafter "Compl.") [Docket Item 1],

¶¶ 7-8.) Plaintiff surrendered his store in August of 2017. (Id. at ¶ 31.) Plaintiff alleges Defendant (1) breached the covenant of good faith and fair dealing under New Jersey law; (2) breached the franchise agreements; and (3) violated the New Jersey's Franchisee Protection Act (hereinafter, "NJFPA"), N.J.S.A. §§ 56:10-1 et seq. (2013), by attempting to constructively terminate Plaintiff's franchise. (Id. at ¶¶ 33-37.)

Pending before the Court is Defendant's motion to dismiss the Complaint, alleging Plaintiff fails to state a claim under any count of his Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Motion to Dismiss (hereinafter, "Def.'s Mot.") [Docket Item 4].)

The principal issues before the Court are whether the Plaintiff plausibly alleges the counts of breach of covenant of good faith and fair dealing, breach of contract, and violation of New Jersey's Franchisee Protection Act (N.J.S.A. §§ 56:10-1, et seq.) based on the following allegations:

> By failing to repair Plaintiff's store as agreed following damage from Hurricane Sandy, imposing unreasonable charges that entirely diminished Plaintiff's profits, failing to properly advertise for Plaintiff as agreed and paid for, failing to let Plaintiff obtain the lowest cost merchandise as stated in the Franchise Agreements, and targeting Plaintiff's store for "take back," Defendant took actions, in violation of New Jersey law, to attempt to constructively terminate Plaintiff's franchise under a concerted and deliberate effort to drive

out franchisee's from 7-Eleven, Inc. in the greater
South Jersey market.

(Compl. [Docket Item at 1], ¶ 33.)

Plaintiff has pled that he qualifies as a franchisee under
the NJFPA (N.J.S.A. §§ 56:10-1, et seq.), and that there existed
"Franchise Agreements" between Plaintiff and Defendant. (Id. at
¶¶ 5, 7, 8.) The Court accepts well-pleaded statements in the
Complaint as facts. However, for the reasons set forth below,
the Court finds that Plaintiff has not sufficiently alleged
plausible grounds for a legal claim as to any of the three
counts listed in the Complaint, as would survive a Fed. R. Civ.
P. 12(b)(6) motion. It is not clear, however, that a future
curative amendment would be futile. Accordingly, the motion to
dismiss will be granted without prejudice and Plaintiff shall be
granted an opportunity to file a curative amended complaint
consistent with this opinion addressing these deficiencies.

## II. Background[1]

Plaintiff Bassel Khorchid, a New Jersey resident, entered
into an initial franchise agreement ("First Franchise
Agreement") in May of 2009 with 7-Eleven, Inc., a Texas
corporation with a principal place of business in Texas. (Compl.

---

[1] The Court accepts all well pleaded statements as true. At this
stage, the Court does not consider extra evidence. Rather, the
Court only examines the four corners of the Complaint to determine
whether the Plaintiff has sufficiently pled his claims, together
with documents referenced in the Complaint.

[Docket Item 1], ¶¶ 1, 2, 7.) The First Franchise Agreement required Plaintiff to establish and maintain a 7-Eleven convenience store located in Atlantic City, New Jersey, store numbered 2411-23776D. (Id. at ¶¶ 5, 8.)

In October 2016, Plaintiff and Defendant executed a revised version of the First Franchise Agreement for Plaintiff's store referred to as "Franchise Agreement (hereinafter, "Second Franchise Agreement"). (Id. at ¶ 8.) Prior to the execution of the Second Franchise Agreement, Plaintiff was informed by Defendant that he could either sign the Second Franchise Agreement as written, or forgo continuing as a franchisee of Defendant. (Id. at ¶ 10.)

Plaintiff avers that he at all times substantially complied with the material terms of the Franchise Agreements. (Id. at ¶ 12.) Plaintiff contends that Defendant failed to perform in accordance with the "Franchise Agreements." (Id. at ¶ 14.) It is unclear which agreement pertains to any alleged violation within the Complaint, as the entire Complaint alludes to "Franchise Agreements" without distinguishing which agreement pertains to which legal claim. Specifically, Plaintiff makes the following allegations, inter alia, regarding Defendant's noncompliance:

1. Hurricane Sandy extensively damaged the exterior of Plaintiff's store, however Defendant refused to repair it, despite the

Franchise Agreement term requiring Defendant to make necessary repairs. (Id. at ¶ 15.)

2. Defendant initiated new policies and charges to Plaintiff designed to diminish the profits of Plaintiff. (Id. at ¶ 16.)

3. If Plaintiff did not buy from the vendors that 7-Eleven wants him to, 7-Eleven increased its split of the profits, despite the fact that Plaintiff was supposed to be an independent contractor who was responsible for running the store. (Id. at ¶ 18.)

4. Therefore if Plaintiff found merchandise at a lower cost he nonetheless could not purchase them and he must buy from 7-Eleven vendors, who at times are overly expensive and diminish Plaintiff's profits. (Id. at ¶ 19.)

5. As an example, whereas Plaintiff's store generated $1,239,030.25 in total sales in a one-year period in 2011 and net income for Plaintiff of $36,050.11 representing 2.91% of total sales as profit for Plaintiff, a one-year period ending in April of 2016 for the same store generated $1,265,306.67 in total sales but only $2,790.77 in net income for Plaintiff, representing only .02% of sales as profit for Plaintiff. (Id. at ¶ 17.)

6. Plaintiff believes and therefore avers that the price negotiated by Defendant is much high than the same vendors sell to other retail establishments in the same geographic area. (Id. at ¶ 21.)

7. Despite the terms of the Agreement which state otherwise, 7-Eleven, Inc. was not getting the lowest prices for the Plaintiff. (Id. at ¶ 22.)

8. Defendant failed to market and advertise for
   Defendant as agreed, despite charging
   Defendant[2] for said advertising. (<u>Id.</u> at ¶ 24.)

9. Defendant failed to change its stores,
   products, and marketing despite the ever-
   changing market and the expectations of
   consumers. (<u>Id.</u> at ¶ 23.)

10. Due to, <u>inter alia</u>, the lack of response by 7-
    Eleven to the competition, Plaintiff's gross
    sales and net profits decreased. (<u>Id.</u> at ¶ 25.)

11. The unequal bargaining power between Plaintiff
    and Defendant allowed Defendant to dictate the
    terms and conditions of every agreement and to
    impose unreasonable charges and demands upon
    Plaintiff, which diminished any net income for
    Plaintiff. (<u>Id</u>. at ¶ 26.)

12. Plaintiff believes and therefore avers that
    Defendant devised a plan to terminate the
    Franchise Agreements with Plaintiff through
    the use of two tactics: (1) to make the
    business conditions so hostile that Plaintiff
    would want to terminate the Franchise
    Agreement; and (2) to make false assertions
    that Plaintiff violated the Franchise
    Agreement. (<u>Id.</u> at ¶ 27.)

13. It is believed and therefore averred that
    Defendant's plan to drive out Plaintiff as a
    franchisee of 7-Eleven, Inc. is part of a wider
    scheme internally referred to by Defendant as
    "Operation Philadelphia" to drive out several
    franchisees from their franchises with 7-
    Eleven, Inc. and "take back" several 7-Eleven
    stores in the greater Philadelphia and South
    Jersey market. (<u>Id.</u> at ¶ 28.)

14. A terminated franchise is a windfall to the
    Defendant. (<u>Id.</u> at ¶ 29.)

---

[2] Plaintiff presumably meant "Plaintiff" instead of "Defendant" in
this statement.

15. When a franchise is terminated, and then sold to a new franchisee, it is believed and therefore averred that the Defendant gets paid the franchise fee again. (<u>Id.</u> at ¶ 30.)

16. As a result of the forgoing frustrating conditions, Plaintiff surrendered his store in August of 2017. (<u>Id.</u> at ¶ 31.)

Defendant files a motion to dismiss, arguing (1) there was no breach of contract; (2) there is no valid claim under the covenant of good faith and fair dealing as it is overridden by the contract's express terms and the Plaintiff does not allege how he was deprived the fruit of the contract; and (3) because there is no specific provision violated by the NJFPA, Plaintiff fails under Federal Rule Civil Procedure 8(a). (<u>See</u> <u>generally</u> Def.'s Mot. [Docket Item 4].)

## III. Procedural History

On April 28, 2018, Plaintiff filed the present Complaint in this Court. (Compl. [Docket Item 1].) Plaintiff issued a summons on April 30, 2018 including a waiver of service executed by Plaintiff.

On May 21, 2018, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. [Docket Item 4].) Defendant argued, <u>inter</u> <u>alia</u> (1) there was no breach of contract; (2) there is no valid claim under the covenant of good faith and fair dealing as it is overridden by the contract's express terms and the Plaintiff does not allege

how he was deprived the fruit of the contract; and (3) because there is no specific provision violated by the NJFPA, Plaintiff fails under Federal Rule Civil Procedure 8(a). Id.

Plaintiff subsequently filed an opposition brief, arguing, inter alia, that Defendant's Motion to Dismiss should be denied because: (1) Plaintiff has indeed alleged specific contract provisions breached; (2) Plaintiff's breach of contract claims are not duplicative of his claim for breach of the covenant of good faith and fair dealing, which rise under different factual allegations of the Complaint; (3) the allegations for breach of good faith do not contradict the franchise agreements, and Plaintiff was deprived of the fruits of said agreement by having his profits diminished and the store terminated; (4) Plaintiff does allege damages; and (5) Plaintiff has plead a proper claim for Breach of the Franchisee protection Act. (Brief in Opposition (hereinafter, "Pl.'s Opp'n") [Docket Item 8], 2.) Defendant filed a reply brief. (Reply Memorandum ("Def.'s Reply") [Docket Item 9].)

The motion to dismiss is fully briefed and will be decided without oral argument pursuant to Federal Rule Civil Procedure 78.[3]

---

[3] The Court exercises diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

## IV. Standard of Review

Pursuant to Federal Rule Civil Procedure 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief," which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). (emphasis omitted).

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, while disregarding unsupported conclusory statements, a court concludes that plaintiff has failed to set forth fair notice of what the claim

is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## V.   Discussion

### A.   Count I: Breach of Covenant of Good Faith and Fair Dealing

"A covenant of good faith and fair dealing is implied in every contract in New Jersey," including franchise agreements. Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997) (citations omitted). In this claim, many of the alleged facts do not correspond clearly to the violations listed in the Complaint, for which the Plaintiff seeks damages. (See Generally, Compl. [Docket Item 1].)) While a claim very well may exist, where a legal conclusion is not supported by factual obligations, as here, it will not survive the pleading requirements of Federal Rule Civil Procedure 8(a). Accordingly, Plaintiff's claim for Count I will be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., as now explained.

To support a claim of the breach of the covenant of good faith and fair dealing, the plaintiff "'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005) (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)). In addition, "[p]roof of 'bad motive or intention' is vital to an action for breach of the covenant." Id. (quoting Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001)).

Upon a careful reading, this Court could not separate the factual allegations attached to Counts I and II for breach of covenant of good faith and fair dealing and breach of contract. This Court finds unclear which factual allegation is attached to which legal claim. They cannot attach to both, however, because they are mutually exclusive. The subsequent section of the Complaint which includes Counts I, II, and III, does not clarify this issue. includes the same summary of the same allegations for each count. Under Count I, Plaintiff states factual allegations that constituted a breach of covenant of good faith and fair dealing. In Counts II and III, Plaintiff merely directs the reader to see the same allegations in Count I: "Defendant has violated (breach of contract/violation of New Jersey's

Franchisee Protection Act (N.J.S.A. [§§] 56:10-1, et seq., by its actions as set forth above." (Compl. [Docket Item 1], ¶¶ 33-37.)

The following facts are presented under each Count of the Complaint:

> 33. By failing to repair Plaintiff's store as agreed following damage from Hurricane Sandy, imposing unreasonable charges that entirely diminished Plaintiff's profits, failing to properly advertise for Plaintiff as agreed and paid for, failing to let Plaintiff obtain the lowest cost merchandise as stated in the Franchise Agreements, and targeting Plaintiff's store for "take back," Defendant took actions, in violation of New Jersey law, to attempt to constructively terminate Plaintiff's franchise under a concerted and deliberate attempt to drive out franchisee's from 7-Eleven, Inc. in the greater South Jersey market.
>
> 34. Plaintiff did actually terminate Plaintiff's franchise on August 18, 2017.
>
> 35. Defendant's actions against Plaintiff were a breach of the Covenant and Good Faith and Fair Dealings.
>
> WHEREFORE, Plaintiff demands judgment against Defendant for damages resulting from its breach of the covenant of good faith and fair dealing, punitive damages, attorney's fees and costs, and such further relief as the Court deems equitable and just.

(Id. at ¶¶ 33-35.)

Defendant rightfully asserts Plaintiff's claim for breach of implied covenant is based on the same factual allegations as

its claim for breach of contract and therefore improper. (Def.'s Mot. [Docket Item 4], 6.)

"[A] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355, 2014 WL 6048720, at *3 (D.N.J. Nov. 14, 2013) (citations omitted). Plaintiff's Opposition Brief counters that the breach of contract claim is not duplicative and arises from different facts. (Pl.'s Opp'n [Docket Item 8], 2.) Plaintiff provides the following provisions as "separate," non-duplicative breach of covenant claims:

> 16. Defendant initiated new policies and charges to Plaintiff designed to diminish the profits of Plaintiff.
>
> 17. As an example, where Plaintiff's store generated $1,239,030.25 in total sales in a one-year period in 2011 and net income for Plaintiff of $36,050.11 representing 2.91% of total sales as profit for Plaintiff, a one-year period ending in April of 2016 for the same store generated $1,265,306.67 in total sales but only $2,790.77 in net income for Plaintiff, representing only .02% of sales as profit for Plaintiff.
>
> 19. Therefore if Plaintiff found merchandise at a lower cost he nonetheless could not purchase them and he must buy from 7-Eleven vendors, who at times are overly expensive and diminish Plaintiff's profits.
>
> 20. The prices with Defendant's approved vendors are negotiated and established by defendant, which is commonly known as the "7-Eleven price."

23. Defendant failed to change its stores,
products, and marketing despite the ever-
changing market and expectations of consumers.

24. Defendant failed to market and advertise
for Defendant as agreed, despite charging
Defendant for said advertising.

25. Due to, _inter alia_, the lack of response
by 7-Eleven to the competition, Plaintiff's
gross sales and net profits decreased.

(Compl. [Docket Item 1], ¶¶ 16, 17, 19, 20, 23-25.)

This Court finds Plaintiff's clarification insufficient.
While the specific allegations above are stated in the
Plaintiff's Opposition Brief as "non-duplicative" of the breach
of contract claim, these facts remain jumbled and unspecified in
the Complaint. Plaintiff has not, for example, explained his
grounds for alleging that Defendant acted with bad motive or
intention, rather than simply breaching some contractual
provision. Moreover, conclusory allegations do not suffice to
show these requirements were met. The general statements
regarding Defendant's behavior seem more conclusory than
specific in nature. Therefore, it is unclear upon which grounds
Plaintiff's arguments may rest.

Even if the statements passed Rule 8's lenient pleading
standard, it is unclear whether the alleged facts point to a
"'bad motive'" as is "vital" to a claim for breach of the
implied covenant of good faith and fair dealing." Brunswick

Hills Racquet Club, Inc., 864 A.2d at 396 (quoting Wilson, 773
A.2d at 1130). Here, Plaintiff concedes that he entered into the
subsequent Franchise Agreement with Defendant. (Compl. [Docket
Item 1], 2.) Here, Plaintiff does not present a claim seeking to
invalidate the Second Franchise Agreement (e.g. duress,
fraudulent inducement, unconscionability, or the like). Nor does
the Plaintiff describe some other circumstance that may present
a claim for lack of benefits originally bargained for in the
contracting of the Second Franchise Agreement.

Plaintiff additionally challenges Defendant's contention
that the conduct that occurred before the Second Franchise
Agreement in October of 2016 cannot be asserted. (Pl.'s Opp'n.
[Docket Item 8], 13.) Plaintiff contends the First Franchise
Agreement was renewed, which makes irrelevant Defendant's cited
cases in which allegations predated any contract with the
opposing party. (Id.) While this distinguishing factor may be
relevant, depending on the content included in the First
Franchise Agreement, this Court's dismissal of Count II of the
Complaint for breach of contract is not based upon review of
conduct that occurred prior to the Second Franchise Agreement in
October 2016, and therefore need not engage in this legal
analysis. One of the main deficiencies the Complaint has under
the Iqbal/Twombly standard is precisely its failure to discern
which factual conduct relates to which legal claim. Even more

unclear is which Franchise Agreement raised which issue, as the
Complaint consistently states "Franchise Agreements" in the
Complaint without distinguishing which agreement pertains to
which claim, nor the provision of the applicable contract that
was breached. Such unclear allegations on their face do not
adequately give Defendant notice sufficient to plead legal
claims to pass Rule 8's lenient pleading standard which still
requires a complaint that is plausible on its face.

Defendant provides the Second Franchise Agreement entered
into on October 27, 2016 (Def.'s Mot., [Docket Item 4], Ex. A.)
A District Court may properly refer to the factual allegations
contained in other documents, such as documents referred to in
the complaint and matters of public record, if the claims of the
plaintiff are based upon those documents. In re Burlington Coat
Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1996). Such
documents must be "integral to or explicitly relied upon in the
complaint." Id. (citation and internal quotations omitted).
Therefore, although Plaintiff does not clarify which Agreement
was violated or the section of the violation, the Court may look
to the Second Franchise Agreement provided by Defendant to
determine whether the factual allegations add up.

Here, we turn to the contract to analyze the alleged
violations of law. The Second Franchise Agreement, entered
on October 27, 2016 and presented in Defendant's Motion as

Exhibit A, includes the following with regards to Plaintiff's

allegations:

1. You agree to purchase your Inventory and other
   products and services only from Bona Fide
   Suppliers. Except for your shares in publicly-
   traded companies . . . (Def.'s Mot. [Docket
   Item 4] Ex. A., ¶ g(1).)

2. You agree to at all times during the Term
   purchase at eighty-five percent (85%) of your
   total Purchases and, separately, eighty-five
   percent (85%) of your cigarette purchases,
   both computed monthly at cost, from
   Recommended Vendors in compliance with the
   Recommended Vendor Purchase Requirement . . .
   (Id. at ¶ g(2).)

3. We agree to make a commercially reasonable
   effort to obtain the lowest cost for products
   and services available from such Vendor to 7-
   Eleven on a Market Basket Basis by identifying
   all available discounts, allowances and other
   opportunities for price adjustments. (Id. at
   ¶ j(1).)

4. When we consider it necessary during the Term
   of this Agreement, we agree to: (1) repaint
   and repair the interior and exterior of the
   store; (2) replace 7-Eleven Equipment,
   including cash registers and point-of-sale
   computers; (3) replace plate glass in front
   windows and front doors; (4) repair the floor
   covering, exterior walls, roof, foundation,
   and parking lot; (5) maintain the structural
   soundness of the Store; and (6) maintain the
   HVAC Equipment. You hereby consent to the
   foregoing. We may charge you for any of the
   repairs or replacements contemplated by this
   paragraph 20(d), if, in our reasonable
   opinion, your abuse or neglect makes them
   necessary. (Id. at ¶ 20(d).)

5. You agree to pay us the Advertising Fee in the
   same manner and at the same time you pay us
   the 7-Eleven Charge in accordance with

paragraph 10. Advertising Fees become our
property to be spent by us in accordance with
Paragraph 22(a)(3) and are not held by us in
trust. (<u>Id.</u> at ¶ 22(a)(1).)

6. We may arrange for all advertising of the 7-
Eleven System ... or merchandise sold in or
services offered by 7-Eleven Stores, as we
desire. We agree to spend the Advertising Fees
we collect for Advertising Materials and
Programs which may, in our sole discretion, be
used for the general benefit of the 7-Eleven
System, for local, regional, and/or national
promotions, or 7-Eleven Store(s). We agree to
accept suggestions from 7-Eleven franchisees
on the use of the funds collected as
Advertising Fees. Provided, however, you agree
that we have and will continue to have the
sole and absolute right to determine how
Advertising Fees will be spent . . . (<u>Id.</u> at
¶ 22(a)(3).)

In stark contrast to Plaintiff's allegations, the Second
Franchise Agreement gives defendant broad discretion in
determining whether to provide maintenance to stores and how to
advertise. Plaintiff claims Defendant did not "market and
advertise as agreed" despite that Plaintiff paid for said
advertising (Compl. [Docket Item 1], ¶ 24.) However, the
Contract allows Defendant to advertise in a way that provides
"general benefit of the 7-Eleven System . . ." and even goes on
to say that Defendant will have "the sole and absolute right" to
determine how these advertising fees are spent. (Def.'s Mot.
[Docket Item 4], ¶ 22(a)(3).)

Additionally, Plaintiff asserts "despite the terms of the Agreement[4] which state otherwise, 7-Eleven was not getting the lowest prices for the Plaintiff." (Compl. [Docket Item 1], ¶ 22.) Defendant has agreed to make a "commercially reasonable effort" to obtain the lowest cost from vendors to Defendant. (Def.'s Mot. [Docket Item 4], ¶ j(i).) Therein lies the minor discrepancy in language between Plaintiff's assertion and the contract language itself: Plaintiff avers the "Franchise Agreements" indicate Defendant will get "best prices for Plaintiff," whereas the Second Franchise Agreement presented states Defendant will make a "commercially reasonable effort" to obtain the lowest cost. (Id.) Nowhere in the Second Franchise Agreement is there language that Defendant will get the lowest prices for Plaintiff. If the latter contention was violated, that being the obligation to make a commercially reasonable effort, such a claim should be made out in the Complaint.

Moreover, a plaintiff cannot satisfy the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff. Elliot & Frantz, Inc. v. Ingersoll-

---

[4] Again, unclear in all Plaintiff's claims regarding the "Franchise Agreement," is to which Agreement the Plaintiff refers. Perhaps Plaintiff can remedy this shortcoming if given a chance to replead the causes of action.

Rand Co., 457 F.3d 312, 329 (3d Cir. 2006). While Plaintiff
posits some facts that could be related to Defendant's duty to
make a "commercially reasonable effort" to obtain the lowest
cost from vendors to 7-Eleven, the facts presented: a loss of
profit, and lack of bargaining power, do not point to the
violation of a specific section franchise agreement.

Plaintiff points out that "a party to a contract breaches
the covenant if it acts in bad faith or engages in some other
form of inequitable conduct in the performance of a contractual
obligation." (Pl.'s Opp'n [Docket Item 8], 14 (citing Black
Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288
(3d Cir. 2000)).) In addition, the covenant operates to ensure
that "neither party shall do anything which will have the effect
of destroying or injuring the right of the other party to
receive the fruits of the contract[.]" (Pl.'s Opp'n [Docket Item
8], 14 (citing Sons of Thunder, Inc., 690 A.2d at 575).)

However, the supporting sections of the Complaint alluded
to in the Opposition Brief appear to be more "conclusory
statements" rather than plausible legal claims of "bad motive"
that would survive the Iqbal/Twombly pleading standard. There
are no supported descriptions of conduct that would make out a
viable legal claim. Because Plaintiff does not clearly plead
which Agreement(s) or section(s) were violated in the Complaint,
and the allegations cited in the Opposition Brief are at odds

with the 2016 Franchise Agreement provided by the Defendant, Count I shall be dismissed.

**B.    Count II: Breach of Contract Claim**

Taking all well-pled allegations in the Complaint as fact, the Court concludes Plaintiff has failed to adequately plead his claim for breach of contract. The Court finds well-taken Defendant's argument in its current state, with all due deference to Plaintiff as the non-movant, that its breach of contract allegations are not sufficiently pleaded to pass the Iqbal/Twombly standard. A plaintiff bringing a cause of action for breach of contract must establish: (1) the existence of a valid contract with plaintiff and defendant; (2) a breach of the contract by defendant; (3) performance by the plaintiff of his or her obligations under the contract; and (4) resulting damages. Oswell v. Morgan Stanley Dean Witter & Co., No. 06-5814, 2007 WL 1756027, at *5 (D.N.J. June 18, 2007). A plaintiff cannot meet the burden of establishing these elements by merely making conclusory allegations. Moreover, under New Jersey law a contract is only enforceable if it is "sufficiently definite in its terms that the performance to be rendered by each party can be reasonably ascertained." Savarese v.  Pyrene Mfg. Co., 89 A.2d 237, 239 (N.J. 1952) (citations omitted); Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992) (courts

generally hold that an agreement is unenforceable "[w]here parties do not agree to one or more essential terms.").

The key issue here is whether Plaintiff has properly pleaded the second essential element of a breach of contract claim – a breach of the contract by defendant, though it remains unclear whether other elements of the Complaint are also unsatisfied. Succinctly put, it remains unclear whether Plaintiff also alleges the first element was satisfied – whether a valid contract was entered – as Plaintiff alleges "unequal bargaining power of the parties." (Compl. [Docket Item 1], ¶ 26.), and asserted that Defendant was informed to either "sign the Franchise Agreements as written, or forgo continuing as a franchisee of 7-Eleven, Inc." (Id. at ¶ 10.) Additionally, the fourth element of a breach of contract claim - whether there are damages - is also vague. For all Counts, Plaintiff demands "damages resulting from its breach of contract, punitive damages, attorney's fees and costs, and such further relief as the Court deems equitable and just." (Id. at ¶ 36.) In his opposition brief, Plaintiff contends the damages are clearly outlined in the Complaint as "diminished profits, and "the loss of his store." (Pl.'s Opp'n. [Docket Item 8], 13.) However, these "damages" were not listed in the damages section of the Complaint.

Moreover, it is unclear in what manner Plaintiff was "forced" to surrender given the vague nature of the underlying facts presented. It is possible that Plaintiff infers facts such as the "unequal bargaining power" between Defendant and Plaintiff in contracting or perhaps the new disadvantageous terms and conditions imposed in the Second Franchise Agreement that "impose unreasonable charges and demands upon Plaintiff, which diminished any net income for Plaintiff." However, these factual allegations are not expressly listed as leading to "constructive eviction" as alleged in the Complaint. Rather, they are written facts jumbled in a long list of other allegations that rest unattached to Counts I, II, or III of the Complaint, left unclear as to which franchise agreement they belong to.

Defendant pointed to Eprotec Pres., Inc. v. Engineered Materials, Inc., a 2011 case which states, "[u]nder New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." (Def's Mot. [Docket Item 4], 4 (citing No. 10-5097, WL 867542, at *8 (D.N.J. Mar. 9, 2011)).) Failure to allege the specific provisions of contracts breached is grounds for dismissal. Skypala v. Mortgage Electronic Registration Systems, Inc., 655 F.Supp.2d 451, 459 (D.N.J. 2009) (dismissing claim where "the Complaint does not identify the provisions Plaintiff asserts were breached"). In

the Plaintiff's Opposition Brief, Plaintiff asserts the

following "unduplicated" provisions in support of the breach of

contract claim:

13. Under the terms of Franchise Agreements, Defendant promised to perform, <u>inter alia</u>, the following:

    a. Plaintiff will benefit as a franchisee by having the bargaining power of a chain and make every commercially reasonable effort to obtain the lowest cost for products and services available from Defendant's Bona Fide Suppliers, and maximize profit;
    b. To treat plaintiff as an independent contractor with his own control over the manner and means of the operation of the store;
    c. To make fair and accurate reconciliations of the 7-Eleven Charge Account;
    d. To pay Plaintiff every week the amount of his weekly Draw for each store;
    e. To pay for all utilities associated with the operation of the stores;
    f. To honor all store maintenance service contract and repair both the equipment and building as necessary;
    g. To conduct fair and accurate audits and merchandise reports; and
    h. To promote and advertise on behalf of the store, using collecting contributions for marketing campaigns.

14. Defendant has failed to perform in accordance with the Franchise Agreements.

15. Hurricane Sandy extensively damaged the exterior of Plaintiff's store, however Defendant refused to repair it, despite the Franchise Agreement term requiring Defendant to make necessary repairs.

18. If Plaintiff did not buy from the vendors that 7-Eleven wants him to, 7-Eleven increased its

split of the profits, despite the fact that
Plaintiff was supposed to be an independent
contractor who was responsible for running the
store.

20. The prices with Defendant's approved vendors
are negotiated and established by Defendant,
which is commonly known as the "7-Eleven
Price."

21. Plaintiff believes and therefore avers that
the price negotiated by Defendant is much high
than the same vendors sell to other retail
establishments in the same geographic area.

22. Despite the terms of the Agreement which
states otherwise, 7-Eleven, Inc. was not
getting the lowest prices for the Plaintiff.

24. Defendant failed to market and advertise for
Defendant as agreed, despite charging
Defendant for said advertising.

(Pl.'s Opp'n [Docket Item 8], 6); (Pl.'s Compl. [Docket Item 1],

¶¶ 13-15, 18, 20-22, 24.)

Despite Plaintiff's arguments to the contrary, the factual

allegations laid out in the "background" section of the

Complaint do not correlate to a specific count of the complaint.

As such, they do not provide a ground upon which a "pleader is

entitled to relief" as would pass Rule 8's pleading standard.

FED. R. CIV. P. 8(a)(2).

Moreover, these factual allegations are duplicative of

Plaintiff's claim as to paragraphs 20 and 24 of the Count for

the implied covenant of good faith and fair dealing. This is

contrary to Plaintiff's contention in his brief that the counts

of breach of contract claims and implied covenant of good faith and fair dealing arise from different facts. (Pl.'s Opp'n. [Docket Item 8], 2, 10-11.) It also, again, supports Defendant's argument that Plaintiff's claims under breach of contract arise from the same factual allegations as the breach of contract claim. (Def.'s Mot. [Docket Item 4], 1, 6-7.) However, the Court need not analyze the legal claim surrounding the duplicative issue Plaintiff's breach of contract claim does not meet Iqbal/Twombly standard on its face.

Although other elements of a breach of contract claim are in question, because the claim does not survive the motion to dismiss on the element of breach, this analysis need not go further. Because Plaintiff's Complaint does not adequately plead a breach of contract claim that includes information regarding which contract, which provision, and which claim is alleged, Plaintiff fails to state a claim under New Jersey law. Therefore, this Court grants the motion to dismiss on Count II.

### C. Count III: Violation Of New Jersey's Franchisee Protection Act – N.J.S.A. §§ 56:10-1 et seq.

Plaintiff establishes the NJFPA applies to their franchisee-franchisor relationship with 7-Eleven, Inc. The N.J.S.A. §§ 56:10-4 states that to state a claim under the NJFPA, Plaintiff must allege (1) a place of business within New Jersey, (2) gross sales stemming from the Agency Agreement that

26

exceeded $35,000 in the 12 months preceding initiation of the lawsuit, and (3) that more than 20% of Plaintiff's gross sales came from the franchise relationship. Failure to satisfy any of these requirements necessitates dismissal of an NJFPA claim. Instructional Systems, Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992). Plaintiff qualifies under NSJA because, as of the time of the Complaint on 4/28/2018, gross sales between Plaintiff and Defendant exceeded $35,000 year, and over 20% of said sales derived from Plaintiff's franchise. (Compl. [Docket Item 1], ¶ 11.)

However, vaguely claiming an entire statute is not a specific ground alleged per Rule 8. The heading under Count III cites to the entire NJFPA, N.J.S.A. §§ 56:10-1, et. seq. (Compl. [Docket Item 1], 7.) "Each count of a properly pled complaint must contain: (a) its own cause of action against a clearly identified defendant(s), and (b) those particular factual allegations that would allow the court to draw a reasonable inference that the defendant is liable for that cause of action." Lee-Peckham v. Runa, LLC, No. 14-6635, 2015 WL 150120, at *3 (D.N.J. Jan 12, 2015); see Iqbal, 556 U.S. at 678. Here, Plaintiff's Complaint does not cite to a certain statutory provision that has been violated within the NJFPA. In the Opposition Brief, Plaintiff responds with specific provisions of the N.J.S.A. asserted by the case Kubis & Perszyk Assocs. v. Sun

<u>Microsystems</u>, 680 A.2d 618, 622 (N.J. 1996). (Pl.'s Opp'n.
[Docket Item 8], 15.):

> 1. N.J.S.A. § 56: 10-7: The Act expressly
>    prohibits franchisors from requiring
>    franchisees to agree to unreasonable standards
>    of performance.
>
> 2. N.J.S.A. § 56: 10-5: Termination of or failure
>    to renew a franchise without good cause
>    constitutes a violation of the Act, and good
>    cause is limited to a franchisee's failure "to
>    substantially comply with those requirements
>    imposed . . . by the franchise."
>
> 3. N.J.S.A. § 56: 10-10: The Act expressly
>    authorizes franchisees to institute suit
>    against franchisors "to recover damages
>    sustained by reason of any violation of this
>    act."
>
> 4. Successful franchisees are also entitled to
>    attorney's fees.

However, the complaint does not contain any of the above specific provisions of the N.J.S.A. Additionally, the Complaint does not specify which section of the NJFPA is being violated in which way, nor does the opposition brief clarify this. Plaintiff's opposition brief cites to the "unequal bargaining power" between Plaintiff and Defendant. (<u>Id.</u>) Such additions could be included in an amended complaint, as they are not alleged in the Complaint at issue, and it is not clear that such an amendment would be futile.

In addition, Plaintiff asserts this power imbalance allows Defendant to dictate terms and conditions of "every agreement"

and to "impose unreasonable demands on Plaintiff." (Id.)
However, there is no clear connection between facts in the
Complaint and unequal bargaining power. The mere existence of
the statement "unequal bargaining power" in the Complaint is
more akin to a conclusory allegation than a factual allegation
that would "allow the Court to draw a reasonable inference that
the defendant is liable." Twombly, 550 U.S. 544 at 556.
Plaintiff claims the requirement to maintain a $15,000 balance
in the franchise as one of the unreasonable demands imposed on
Plaintiff, and states this would be shown through discovery.
(Id. at 16, n.7.) The Court remains unconvinced, however, that
the bare conclusion in the Complaint that states the Defendant
imposed "unreasonable demands on Plaintiff," without more, would
provide a plausible factual allegation as would meet the
Iqbal/Twombly standard.

Plaintiff additionally states that the "contract" makes it
clear that Plaintiff was wrongfully terminated through
"constructive termination." (Pl.'s Opp'n. [Docket Item 8], 16.)
However, the facts surrounding the "constructive termination"
remain unpled. The Second Franchise Agreement itself does not
support the purported violations by Plaintiff. Therefore, more
facts are needed regarding the alleged unequal bargaining power
and unfairness surrounding contracting, as well as which

contract carries which violation, for the Complaint to be plausible on its face.

Although there may be circumstances surrounding the contracting of the Franchise Agreement that may violate some provision of the statute, Plaintiff fails to properly allege the requisite specific cause of action. Therefore, the Defendant's motion to dismiss is granted as to Count III, without prejudice to the right to amend.

## VI. Conclusion

For the forgoing reasons, Defendant's motion to dismiss will be granted without prejudice. Plaintiff may file an amended complaint within 21 days of entry of the accompanying order, if Plaintiff is able to cure the noted pleading deficiencies consistent with counsel's obligations under Rule 11, Fed. R. Civ. P.

An accompanying Order will follow.

**October 22, 2018___**                **s/ Jerome B. Simandle___**
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge