IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

BASSEL KHORCHID,

                Plaintiff,

      v.

7-ELEVEN, INC.,

                Defendant.

HONORABLE RENÉE MARIE BUMB

Civil Action No.
18-8525 (RMB/JS)

**OPINION**

---

APPEARANCES:

Ahmed M. Soliman, Esq.
SOLIMAN & ASSOCIATES, P.C.
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
     Attorney for Plaintiff

Dennis R Callahan, Esq.
Amy L. Hansell, Esq.
WARD GREENBERG HELLER & REIDY, LLP
1853 Market Street, Suite 650
Philadelphia, PA 19103
     Attorneys for Defendant

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This case arises over alleged violations of a franchise agreement entered into by Plaintiff Bassel Khorchid (hereinafter, "Plaintiff") and 7-Eleven, Inc. (hereinafter, "Defendant") in October 2017. (See Amended Complaint, hereinafter, "Am. Compl." [Docket Item 12].) Plaintiff alleges that Defendant repeatedly violated the franchise agreement (id.), and due to the alleged

violations, Plaintiff surrendered his store in August of 2017. (Id. at ¶ 37.) Plaintiff's Amended Complaint re-pleads claims that Defendant (1) breached the franchise agreement, (id. at ¶¶ 39-44); (2) breached the covenant of good faith and fair dealing under New Jersey law (id. at ¶¶ 45-55); and (3) violated New Jersey's Franchisee Protection Act (hereinafter, "NJFPA"), N.J. Stat. Ann. §§ 56:10-1, et seq. (2013), by attempting to constructively terminate Plaintiff's franchise. (Id. at ¶¶ 56-59.) Plaintiff's Amended Complaint also asserts additional claims of (4) unjust enrichment (id. at ¶¶ 60-62); and (5) unconscionability. (Id. at ¶¶ 63-66.)

Pending before the Court are Defendant's motion to dismiss the Amended Complaint, alleging that Plaintiff fails to state a claim under any count pursuant to Federal Rule of Civil Procedure 12(b)(6), (see Def.'s Mot. to Dismiss [Docket Item 13]), and Defendant's motion to stay arbitrable claims, arguing that aspects of Plaintiff's Amended Complaint concerning vendor negotiating practices must be stayed pending mandatory arbitration, as required by the Franchise Agreement.[1] (See Def.'s Mot. to Stay [Docket Item 14].) Subsequently, Defendant submitted to the Court

---

[1] In the original Complaint, Plaintiff variously referred to a "Franchise Agreement" and to multiple "Franchise Agreements." Following the filing of the Amended Complaint, the Court finds that the parties are now referring to the Agreement signed October 27, 2016 and included in the Am. Compl. at Docket Item 12-1.

an Opinion from the Eastern District of Pennsylvania regarding a similar franchise agreement dispute between 7-Eleven and a franchisee. (See Notice [Docket Item 21]; Takiedine v. 7-Eleven, Inc., No. 17-4518, 2019 WL 934994 (E.D. Pa. Feb. 25, 2019).) For the reasons stated herein, the Court will grant in part and deny in part Defendant's motion to dismiss and will grant Defendant's motion to stay arbitrable claims.

## II.  BACKGROUND

### A. Facts

The Court previously presented the facts of this case in Khorchid v. 7-Eleven, Inc., No. 18-8525, 2018 WL 5149643 (D.N.J. Oct. 22, 2018), and they are incorporated herein.

### B. Procedural History

On April 28, 2018, Plaintiff filed the initial Complaint in this case. (See Complaint [Docket Item 1].) Defendant previously moved to dismiss Plaintiff's initial Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (See Def.'s Mot. to Dismiss [Docket Item 4].) On October 22, 2018, the Court granted Defendant's prior motion to dismiss without prejudice and granted Plaintiff leave to file an amended complaint. Khorchid, 2018 WL 5149643, at *12.[2]

_____

[2] Plaintiff timely filed his Amended Complaint. (See Am. Compl. [Docket Item 12].) Thereafter, Defendant filed the present motion to dismiss, (see Def.'s Mot. to Dismiss [Docket Item 13]), and a motion to stay pending arbitration. (See Mot. to Stay [Docket Item 14].) Plaintiff subsequently filed briefs in opposition to each motion, (see Pl.'s Opp'n to Stay [Docket Items 15]; Pl.'s Opp'n to

**III. STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief," which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the

---

Dismiss [Docket Item 16]), and Defendant filed a reply brief with respect to each motion. (See Def.'s Reply to Dismiss [Docket Item 17]; Def's. Reply to Stay [Docket Item 18].) Defendant's motions have been fully briefed and will be decided without oral argument pursuant to Fed. R. Civ. P. 78(b).

complaint as true and viewing them in the light most favorable to the plaintiff, while disregarding unsupported conclusory statements, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

In the Third Circuit, to determine arbitrability of an issue, courts apply a two-tier standard of review. See Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764 (3d Cir. 2013). Where it is apparent on the face of the complaint, or in documents relied upon in the complaint, that the claims at issue in the case are subject to arbitration, the case is considered under a motion to dismiss standard, Fed R. Civ. P. 12(b)(6). Id. at 774-76. However, where the complaint does not establish on its face that the parties have agreed to arbitrate, or where the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, then the parties are entitled to limited discovery on the question of arbitrability before a

renewed motion to compel and/or stay arbitration is decided on a summary judgment standard. Fed. R. Civ. P. 56. <u>Id.</u>

## IV. DISCUSSION

### A. Count I: Breach of Contract Claim[3]

In Count I of the Amended Complaint, Plaintiff re-pleads his breach of contract claim. (Am. Compl. [Docket Item 12], ¶¶ 39-44.) A plaintiff bringing a cause of action for breach of contract must establish: (1) the existence of a valid contract with plaintiff and defendant; (2) a breach of the contract by defendant; (3) performance by the plaintiff of his or her obligations under the contract; and (4) resulting damages. <u>Oswell v. Morgan Stanley Dean Witter & Co.</u>, No. 06-5814, 2007 WL 1756027, at *5 (D.N.J. June 18, 2007). A plaintiff cannot meet the burden of establishing these elements by merely making conclusory allegations. <u>See</u> <u>In re Nice Sys., Ltd. Sec. Litig.</u>, 135 F.Supp.2d 551, 565 (D.N.J. 2001).

Although Plaintiff argues that "unequal bargaining power between Plaintiff and Defendant allowed Defendant to dictate the terms and conditions," (Am. Compl. [Docket Item 12], ¶ 16), and he had to "sign the Franchise Agreements as written, or forgo continuing as a franchisee of [Defendant]," Plaintiff does not

---

[3] The Court finds that Count I's breach of contract claims, particularly with respect to vendor selection practices, are very similar to the issues covered in Paragraphs 15(j) and 15(k) of the Franchise Agreement and may be appropriately addressed in arbitration.

allege that no valid contract existed. (Id. at ¶ 10.) Thus, as Plaintiff does not allege that he did not enter into a valid contract, the Court will assume that Plaintiff agrees that the first element is met for purposes of this motion.

Defendant argues that Plaintiff fails to state a claim for breach of contract because he does not identify which franchise agreement, and which provisions of that franchise agreement, Defendant allegedly breached. (Def.'s Br. to Dismiss [Docket Item 13-2], ¶ 3-4.) Additionally, Defendant contends that Plaintiff failed to allege damages caused by any purported breach. (Id. at 8.)

However, as Plaintiff indicated in his opposition brief, Exhibit A of the Amended Complaint contains only the second franchise agreement signed in October 2016. (See Am. Compl. [Docket Item 12]; Pl.'s Opp'n to Dismiss [Docket Item 16].) Although Plaintiff does not cite to specific section numbers of the Franchise Agreement, he does provide summaries of specific sections that are sufficient for Defendant and the Court to determine the contractual provisions that are supposedly at issue. (Am. Compl. [Docket Item 12], ¶¶ 41a-d.) Count I of Plaintiff's Amended Complaint, its breach of contract claim, includes two separate claims of breach. Additionally, the "background" section of the Amended Complaint contains breach of contract claims that the Court will discuss in this section.

### 1. Failure to Provide Necessary Maintenance

Plaintiff alleges that "Plaintiff's store sustained substantial damage as a result of Hurricane Sandy, however Defendant failed and/or refused to repair the store as requested, and as required by the Franchise Agreements, which expressly states [sic] that Defendant will make necessary repairs." (Am. Compl. [Docket Item 12], ¶ 43.) Defendant argues that Plaintiff's allegation contradicts the actual terms of the franchise agreement which states that "[e]xcept to the extent [Defendant] may expressly assume any of the following responsibilities in writing, [Plaintiff] agree[s] to be responsible for all maintenance, repairs, replacements, janitorial services and expenses relating to the Store." (Franchise Agreement [Docket Item 12-1], ¶ 20(a).)

However, as Plaintiff indicated, Section 20 also states that "[w]hen [Defendant] considers it necessary," Defendant would repair the interior and exterior of the store, replace equipment, replace glass windows and doors, repair flooring, and maintain structural soundness of the store. (Id. at ¶ 20(d).) Defendant argues that Plaintiff failed to allege that Defendant considered the repairs in question "necessary." (Def.'s Br. to Dismiss [Docket Item 17], 5.) Defendant also indicates that Hurricane Sandy struck on October 29, 2012. (Id.) The parties entered into the second franchise agreement four years later in October 2016, which states

that Plaintiff agrees to take the store "in 'as-is' condition."
(Franchise Agreement [Docket Item 12-1], ¶ 8(c).)

The Court must consider all factual allegations Plaintiff asserts as true and determine if Plaintiff pled sufficient facts to set forth a cause of action that put Defendant on fair notice of the grounds for Plaintiff's claim. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 679. Although Plaintiff did not specifically allege that Defendant considered the repairs "necessary," Plaintiff did assert that he requested the repairs and Defendant either failed and/or refused to make them. (Am. Compl. [Docket Item 12], ¶ 43.) The plaintiff in Takiedine v. 7-Eleven, Inc., made a similar claim and the Eastern District of Pennsylvania ruled:

> 7-Eleven was certainly on notice of the nature of the claim, and whether 7-Eleven considered these repairs necessary and whether its failure to provide the maintenance requested breached the contract can be determined at a later stage in the proceeding with the benefit of a factual record.

Takiedine, 2019 WL 934994, at *5. Drawing all reasonable inferences from the pleaded factual allegations in favor of the nonmoving party, here Plaintiff, the Court agrees with the Eastern District of Pennsylvania and will deny Defendant's motion to dismiss, insofar as it seeks to dismiss this breach of contract claim pending the opportunity to develop the issue through discovery.

## 2. Failure to Treat as Independent Contractor

Plaintiff's Amended Complaint references Section 2 of the Franchise Agreement, (Am. Compl. [Docket Item 12], ¶ 41(b)), which states that Plaintiff agrees: "(a) to hold [itself] out to the public as an independent contractor; (b) to control the manner and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of [its] agents and employees, including the day-to-day operations of the Store and all agents or Store employees." (Franchise Agreement [Docket Item 12-1], ¶ 2.) Plaintiff alleges that Defendant breached its franchise agreement and failed to treat Plaintiff as an independent contractor by ordering merchandise that Plaintiff did not authorize and forcing Plaintiff to write off the unsold merchandise at a loss. (Am. Compl. [Docket Item 12], ¶¶ 22 & 44.) Additionally, Plaintiff argues that if he did not buy products from Defendant's specified vendors, Defendant would increase its split of profits even though "Plaintiff was supposed to be an independent contractor who was responsible for running the store." (Id. at ¶ 20.)

Defendant argues that Section 2 only bestows obligations upon Plaintiff and does not require Defendant to treat Plaintiff as an independent contractor. (Def.'s Br. to Dismiss [Docket Item 13-2], 7.) Therefore, Defendant contends, Plaintiff may not state a

claim for breach of contract based on a provision that only specifies Plaintiff's obligations. (Id.)

Additionally, Defendant argues that Plaintiff's breach of contract claim fails because Section 15(b) of the Franchise Agreement states that Plaintiff must "at all times . . . carry at the Store all Categories of Inventory that [Defendant] specif[ies]" and must "comply with all of [Defendant's] standards and specifications for all Inventory." (Id.; Franchise Agreement [Docket Item 12-1], ¶ 15(b).) However, as Plaintiff asserts, Section 15(b) also states that Plaintiff may delete any products from being offered at its store, upon written permission from the Defendant, "which will not be unreasonably withheld." (Franchise Agreement [Docket Item 12-1], ¶ 15(b) (emphasis added).)

With evidence, Defendant may prove that Section 2 does not bestow any contractual obligations upon Defendant. However, Plaintiff may also prove that Defendant unreasonably withheld permission to delete certain products in violation of Section 15(b). At this stage in the proceeding, without the benefit of a factual record, the Court is not prepared to interpret these provisions or dismiss this claim. Therefore, Defendant's motion to dismiss, insofar as it seeks to dismiss this breach of contract claim, will also be denied without prejudice.

**B. Count II: Breach of Covenant of Good Faith and Fair Dealing[4]**

"A covenant of good faith and fair dealing is implied in every contract in New Jersey," including franchise agreements. <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 421 (1997) (citations omitted). To support a claim of the breach of the covenant of good faith and fair dealing, the plaintiff "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>, 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)). In addition, "[p]roof of 'bad motive or intention' is vital to an action for breach of the covenant." <u>Id.</u> (quoting <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236, 249 (2001)).

Plaintiff argues that Defendant breached the covenant of good faith and fair dealing by constructively terminating Plaintiff. (Am. Compl. [Docket Item 12], ¶ 55.) Plaintiff argues Defendant created an "Operation Philadelphia" scheme to drive out franchisees in Philadelphia and South Jersey and take back their

---

[4] The Court finds that Count II's claims, particularly with the respect to the "Operation Philadelphia" scheme insofar as it concerns disputes about proprietary 7-Eleven products, are very similar to the issues covered in Paragraphs 15(j) and 15(k) of the Franchise Agreement and may be appropriately addressed in arbitration.

stores. (Id. at ¶¶ 26 & 54). Plaintiff asserts Defendant carried out this scheme by launching the "7-Select" proprietary product line that forced Plaintiff to write off products at a loss and diminished Plaintiff's profits. (Id. at ¶ 46.) To illustrate the effects of the alleged scheme, Plaintiff indicates that in 2011 Plaintiff's store generated total sales of $1,239,030 and Plaintiff's net income was $36,050, which represented 2.91% of total sales. (Id. at ¶ 47.) However, in 2016 the same store generated $1,265,306 in total sales but Plaintiff only received $2,790 in net income, which represents only 0.02% of total sales. (Id.) Lastly, Plaintiff asserts Defendant "failed to change its stores, products, and marketing despite the ever-changing market." (Id. at ¶ 47.)

Defendant argues that Plaintiff's claim rests on conclusory assertions rather than factual allegations. (Def.'s Br. to Dismiss [Docket Item 13-2], 9.) Additionally, Defendant asserts that the implied covenant of good faith and fair dealing cannot override a contract's express terms and the franchise agreement here specifies that Defendant may change the amount of proprietary products Plaintiff had to offer. (Id.)

Accepting Plaintiff's well-pleaded allegations as true, Plaintiff successfully satisfied the improper motive element by alleging Defendant created a "scheme" to drive out and constructively terminate franchisees. This "scheme" could have

deprived Plaintiff from the benefit of the bargain originally intended by the parties. At this stage of the proceeding, without the benefit of a factual record, the Court will deny Defendant's motion to dismiss, insofar as it seeks to dismiss Plaintiff's breach of covenant of good faith and fair dealing claims.

### C. Count III: Violation of New Jersey's Franchisee Protection Act – N.J. Stat. Ann. §§ 56:10-1, et seq.

Plaintiff claims, and Defendant does not dispute, that the NJFPA applies to its franchisee-franchisor relationship with Defendant. (See Am. Compl. [Docket Item 12], ¶ 15; Def.'s Br. to Dismiss [Docket Item 13-2].) The N.J. Stat. Ann. §§ 56:10-4 states that to state a claim under the NJFPA, Plaintiff must allege (1) a place of business within New Jersey, (2) gross sales stemming from the Agency Agreement that exceeded $35,000 in the 12 months preceding initiation of the lawsuit, and (3) that more than 20% of Plaintiff's gross sales came from the franchise relationship. Failure to satisfy any of these requirements necessitates dismissal of an NJFPA claim. Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992). Plaintiff qualifies under the statute because when Plaintiff initiated the lawsuit, gross sales between Plaintiff and Defendant exceeded $35,000, and over 20% of said sales derived from Plaintiff's franchise. (Am. Compl. [Docket Item 12], ¶ 11.)

However, despite the opportunity to amend its complaint, Plaintiff failed to correct the deficiencies this Court addressed in Khorchid, 2018 WL 5149643, at *11. "Each count of a properly pled complaint must contain: (a) its own cause of action against a clearly identified defendant(s), and (b) those particular factual allegations that would allow the court to draw a reasonable inference that the defendant is liable for that cause of action." Lee-Peckham v. Runa, LLC, No. 14-6635, 2015 WL 150120, at *3 (D.N.J. Jan 12, 2015); see Iqbal, 556 U.S. at 678.

Plaintiff again failed to identify any section of the NJFPA that Defendant purportedly violated in its Amended Complaint.[5] Plaintiff's vague claim that Defendant violated the entire statute fails to satisfy the pleading requirements of Fed. R. Civ. P. 8 and fails to give Defendant fair notice of what the claim is and the grounds upon which it rests. See Erickson, 551 U.S. at 93.

Although Plaintiff's brief in opposition to Defendant's motion to dismiss refers to specific provisions of the NJFPA, the Amended Complaint failed to do so. (Compare Pl.'s Opp'n to Dismiss [Docket Item 16] with Am. Compl. [Docket Item 12].) The Amended Complaint only sets forth conclusory allegations rather than factual allegations that would "allow the Court to draw a reasonable inference that the defendant is liable." Twombly, 550

---

[5] The Amended Complaint solely cites to "N.J.S.A. 56:10-1, et seq." (Am. Compl. [Docket Item 12], ¶¶ 56-59.)

U.S. at 556. "When legal conclusions are not supported by factual allegations, a court may properly dismiss the complaint pursuant to Rule 12(b)(6)." Averhart v. CWA Local 1033, No. 10-6163, 2015 WL 9581753, at *3 (D.N.J. Dec. 30, 2015) (citing Iqbal, 556 U.S. at 679). Therefore, Defendant's motion to dismiss Plaintiff's NJFPA claim shall be granted.

### D. Count IV: Unjust Enrichment

Plaintiff alleges that, although he regularly paid increasing maintenance charges to Defendant, he has not received the benefits of these payments because Defendant failed and/or refused to address Plaintiff's maintenance requests. (Am. Compl. [Docket Item 12], ¶¶ 61-62.) Defendant argues that the Court should dismiss this claim because (1) the Court did not authorize Plaintiff to assert new claims in its Amended Complaint, and (2) the subject matter of Plaintiff's claim is governed by the Franchise Agreement.

The Court dismissed Plaintiff's original Complaint and granted Plaintiff leave to re-plead "an Amended Complaint curing the deficiencies noted in the Opinion." (Order [Docket Item 11].) The Court did not prohibit Plaintiff from asserting new claims that would aid in curing the specified deficiencies. Therefore, the Court will address Plaintiff's additional claims.

To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the

defendant is inequitable." <u>Wanaque Borough Sewerage Auth. v. Twp.</u> <u>of West Milford</u>, 144 N.J. 564, 575 (1996) (citation omitted).

Plaintiff's allegation that he has paid maintenance charges to Defendant and failed to receive a benefit does not constitute a claim of unjust enrichment. (<u>See</u> Am. Compl. [Docket Item 12], ¶¶ 61-62.) His argument is too conclusory and is insufficient under <u>Iqbal</u>'s heightened pleading standard. Conclusory, generalized allegations will not suffice, and the Court will therefore grant Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

**E. Count V: Unconscionability**

Count V of Plaintiff's Amended Complaint asserts a claim for unconscionability. Plaintiff alleges that "portions of the franchise agreement [are] procedurally unconscionable because Plaintiff lacked a meaningful choice in accepting the provisions" and many portions "unreasonably favored Defendant by maximizing Defendant's profits while causing Plaintiff's net profits to dwindle." (Am. Compl. [Docket Item 12], ¶ 65.) Defendant argues that New Jersey law does not recognize a cause of action for unconscionability. (Def.'s Br. to Dismiss [Docket Item 13-2], 14.)

As discussed above in Section D, the Court will address the additional claims Plaintiff included in its Amended Complaint. As a matter of law, the doctrine of unconscionability generally "acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for affirmative relief." <u>Hunter v. Sterling</u>

Bank, Inc., No. 09-0172, 2011 WL 5921388, at *8 (D.N.J. Nov. 28, 2011) (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 566 n. 14 (Super. Ct. Ch. Div. 2002). Therefore, unconscionability cannot be brought as an affirmative claim or cause of action. Id. (citing Lind v. New Hope Prop., LLC, No. 09-3757, 2010 WL 1493003, at *7 (D.N.J. Apr. 13, 2010); see also Alboyacian v. BP Prods. N. Am., No. 09-5143, 2011 WL 5873039, at *5 (D.N.J. Nov. 22, 2011) (unconscionability is not a cause of action that a plaintiff may bring in the affirmative). Therefore, the Court will grant Defendant's motion to dismiss, insofar as it seeks dismissal of Plaintiff's unconscionability claim.

## F. Stay Pending Arbitration

In Count I of his Amended Complaint, Plaintiff claims that Defendant has failed to "make every commercially reasonable effort to obtain the lowest cost for products and services available from Defendant's Bona Fide Suppliers, and maximize profit." (Am. Compl. [Docket Item 12], ¶ 41(a) (emphasis in original).) He further alleges that Defendant required him to purchase goods for sale from Defendant's proprietary "7-Select" product line, which, unlike products from other vendors, cannot be returned if they do not sell, which in turn forces Plaintiff to take the loss on the unsold products in the form of a "write-off." (Am. Compl. [Docket Item 12], ¶ 17.)

In response, Defendant argues that Plaintiff's claims regarding the proprietary merchandise "write-offs" are vendor negotiating practices issues and therefore fall under Paragraphs 15(j) and 15(k) of the Franchise Agreement, which require that such disputes be submitted to arbitration. (Def.'s Reply to Stay [Docket Item 18].) Defendant has therefore moved to stay these claims pending arbitration. Plaintiff argues that Defendant has waived its right to arbitrate these claims and, moreover, that even if Defendant has not waived that right, the "write-off" claims are not covered in the scope of the arbitration agreement. (Pl.'s Opp'n to Stay [Docket Item 15].)

Defendant seeks to stay these arbitrable claims under the Federal Arbitration Act (hereinafter "FAA"), which states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Subject to a few exceptions which do not apply here, the FAA applies to any "written provision in any . . . contract evidencing

a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction." 9 U.S.C. § 2. The Franchise Agreement at issue in this case meets both requirements, as it is in writing and involves interstate commerce, so the FAA applies. Plaintiff does not dispute that the arbitration agreement is covered under the FAA.

## 1. Defendant Has Not Waived its Right to Arbitrate

Plaintiff claims that Defendant has waived its right to arbitrate. (Pl.'s Opp'n to Stay [Docket Item 15].) However, waiver of the right to compel arbitration is "not to be lightly inferred" because of the strong federal policy in favor of arbitrability. Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 232 (3d Cir. 1997). A showing of prejudice to the party resisting arbitration is the "touchstone" for determining whether the right to arbitration has been waived. Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992).

In the Third Circuit, to assess prejudice and to determine whether a party has waived its right to arbitrate arbitrable claims, the courts consider six nonexclusive factors:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5]

> its assent to the court's pretrial orders; and
> [6] the extent to which both parties have
> engaged in discovery.

Nino v. Jewelry Exch., Inc., 609 F.3d 191, 208-09 (3d Cir. 2010).

Under these factors, waiver will "normally be found only where the demand for arbitration came long after suit commenced" because that is when prejudice can be shown by the party that has expended time, effort, and money prosecuting a case under the federal discovery rules which are unavailable in the arbitral forum. PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995); Hoxworth, 980 F.2d at 925-97. "Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more," is generally not enough to constitute waiver. Faragalli, 61 F.3d at 1069 (citing Hoxworth, 980 F.2d at 925). Here, Plaintiff has not shown waiver because he cannot show that he suffered prejudice or that he has suffered due to a lengthy course of litigation.

In their briefs, the parties use the terms "default" and "waiver" interchangeably. (See Def.'s Br. to Stay [Docket Item 14-1]; Pl.'s Opp'n to Stay [Docket Item 15].) Section 3 of the FAA refers to "default," which other courts have held is akin to "waiver." Maxum Fdns., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985). However, neither statutory default under Section 3 nor "waiver" may be lightly inferred given the federal policy favoring arbitration. See Great W. Mortg. Corp, 110 F.3d at 232; In re

Mercury Constr. Corp., 656 F.2d 933, 939 (4th Cir. 1981), aff'd,
Moses H. Cone. Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1
(1983). For purposes of clarity and in line with the Third
Circuit's preferred analysis, this Court will refer to this as
"waiver."

   i.   Defendant's motion to stay was timely

    Plaintiff's brief in opposition to Defendant's motion to stay
does not engage in any substantive analysis of the six Hoxworth
factors; rather, he argues that discovery in a separate case in
the Eastern District of Pennsylvania means that Defendant was
sufficiently noticed of Plaintiff's vendor negotiation practices
claim. (See Pl.'s Opp'n to Stay [Docket Item 15]; see also
Takiedine, 2019 WL 934994 (granting a motion to stay arbitrable
vendor negotiation practices claims in a 7-Eleven franchise
agreement dispute case)). At the time that Plaintiff's brief in
opposition to Defendant's motion to stay was filed, the parties in
Takiedine had nearly completed discovery, so Plaintiff asserts
that Defendant's motion to stay in the present matter was not
timely because Defendant was sufficiently apprised that Plaintiff
would bring a claim on the vendor negotiation practices in this
case. (Pl.'s Opp'n to Stay [Docket Item 15], 2.) Plaintiff is in
error. Despite any similarity between the proceedings, discovery
in Takiedine — a different case with different parties, different
facts, and different procedural history — has no bearing on whether

Defendant waived its right to arbitrate arbitrable claims in this case. See Chong v. 7-Eleven, Inc., No. 18-1542, 2019 WL 1003135, at *9 (E.D. Pa. Feb. 28, 2019) (holding that discovery in the Takiedine case did not prejudice the plaintiffs in Chong).

Plaintiff also claims that Defendant "sat on its rights" and should have pursued arbitration in response to the original Complaint. (Pl.'s Opp'n to Stay [Docket Item 15], 10). However, this Court dismissed the original Complaint due to the vagueness of its underlying facts and, on the breach of contract claim, for failure to allege breach of specific provisions of an unidentified agreement. Khorchid, 2018 WL 5149643, at *9. Although Plaintiff's original Complaint stated that Defendant failed to "make every commercially reasonable effort to obtain the lowest cost for products and services available," his references to two different Franchise Agreements — neither of which were made available to the Court nor to the Defendant at the time the original Complaint was filed, as discussed above— were unclear, and no reference was made to the "write-offs" issue. (Compl. [Docket Item 1].) Because the Court was unable to discern the underlying contractual basis of Plaintiff's claims in the original Complaint, it also follows that Defendant was not given sufficient notice of any vendor negotiating practices claims at that time.

Defendant filed its motion to stay fourteen days after Plaintiff filed his Amended Complaint, which was the first time

the "write-offs" issue was raised with reference to an identified
contract. (Def.'s Br. to Stay [Docket Item 14-1]; Pl.'s Opp'n to
Stay [Docket Item 15].) In Takiedine, the defendant filed its
motion to stay one month after the plaintiff filed an amended
complaint containing a breach of contract allegation, and the
Eastern District of Pennsylvania held that this was not an undue
delay. Takiedine, 2019 WL 934994, at *7; see also Nationwide Mut.
Fire Ins. Co. v. Geo. V. Hamilton, Inc., No. 08-0646, 2010 WL
1445554, at *13-14 (W.D. Pa. Apr. 9, 2010), aff'd, 410 F. App'x
537 (holding that delay of two months does not constitute a waiver
of the right to arbitrate); Chong, 2019 WL 1003135 (holding that
three weeks' delay after filing of an amended complaint does not
constitute waiver). Therefore, Defendant's motion, filed fourteen
days after the Amended Complaint, was not untimely.

ii.  7-Eleven has not meaningfully contested the merits of the
vendor negotiating practices claims

The vendor negotiating practices claims were not raised until
Plaintiff filed his Amended Complaint. (Compare Compl. [Docket
Item 1] with Am. Compl. [Docket Item 12].) Subsequently,
Defendant's only response with respect to these claims has been
their motion to stay pending arbitration. (Def.'s Br. to Stay
[Docket Item 14-1].)

### iii. <u>Defendant reserved its right to arbitrate</u>

In its motion to dismiss Plaintiff's original Complaint, Defendant explicitly addressed the possibility that Plaintiff may raise arbitrable claims:

> To the extent [Plaintiff] contends a breach of the Franchise Agreement occurred based on [Defendant's] vendor practices and discounts, those claims are subject to mandatory arbitration pursuant to Exhibit J of the Franchise Agreement. [Defendant] does not waive and specifically reserves its right to arbitrate any such dispute. However, no fair reading of the Complaint as currently presented indicates that [Plaintiff] is proceeding on such a theory.

(Def.'s Br. to Dismiss [Docket Item 4-1], 4 n.2.) These claims were not raised until the Amended Complaint. (<u>Compare</u> Compl. [Docket Item 1] <u>with</u> Am. Compl. [Docket Item 12].)

### iv. <u>Defendant has not engaged in any non-merits motion practice</u>

Defendant has not filed any non-merits motions concerning the vendor negotiating practices claims. These claims are not included in the Motion to Dismiss the Amended Complaint. (Def.'s Mot. to Dismiss [Docket Item 13].)

### v. <u>Assent to pretrial orders</u>

Defendant has assented to all pretrial orders. However, given that prejudice is the "touchstone" of determining waiver in the Third Circuit, pretrial orders entered prior to the Amended Complaint would have little if any impact because the vendor negotiating practices claims at issue were not raised until the

Amended Complaint. <u>Hoxworth</u>, 980 F.2d at 925. No pretrial orders were issued between the date of the Amended Complaint and Defendant's motion to stay. While long-term assent to pretrial orders, particularly in the context of extensive discovery, may weigh in favor of waiver, Defendant had only assented to orders before these issues were raised. <u>See</u> <u>Nino</u>, 609 F.3d at 212 (finding waiver where a party had assented to ten pretrial conferences and engaged in extensive discovery). No prejudice, therefore, has resulted to the Plaintiff with respect to the vendor negotiating practices claims.

### vi. <u>No discovery has taken place</u>

No discovery has taken place in this case, and discovery in <u>Takiedine</u> has absolutely no bearing on whether Plaintiff has been prejudiced in this case. <u>Chong</u>, 2019 WL 1003135, at *9.

On the balance of the <u>Hoxworth</u> factors, the Court finds that Defendant has not waived its right to seek arbitration of arbitrable claims under the terms of the Franchise Agreement.

### 2. <u>Scope of Arbitration Clause</u>

Neither party disputes their entry into a valid and enforceable arbitration agreement. (Def.'s Br. to Stay [Docket Item 14-1]; Pl.'s Opp'n to Stay [Docket Item 15].) However, Plaintiff asserts that its claims that Defendant forced him to take disadvantageous "write-offs" on required merchandise do not

fall within the scope of the arbitration agreement. (Pl.'s Opp'n
to Stay [Docket Item 15].)

This Court applies a two-step test in determining whether an
arbitration clause is applicable: (1) whether a valid arbitration
clause exists; and (2) whether the particular dispute falls within
the scope of the arbitration agreement. Trippe Mfg. Co. v. Niles
Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). In Trippe, the Third
Circuit stated that "when determining both the existence and the
scope of an arbitration agreement, there is a presumption in favor
of arbitrability." Id. (citing AT&T Techs., Inc. v. Commc'ns
Workers of America, 475 U.S. 643, 650, (1986)). "A court cannot
force a litigant to submit to arbitration any dispute which he has
not agreed so to submit." AT&T Techs., 475 U.S. at 648.
Furthermore, if the claims asserted fall outside the arbitration
agreement, they are not subject to arbitration. PaineWebber, Inc.
v. Hofmann, 984 F.2d 1372, 1377 (3d Cir. 1993).

Here, there is no dispute as to the existence of an
arbitration agreement set forth in Exhibit J of the Franchise
Agreement, as evidenced by both parties being signatories to it
and neither party raising any disputes over the existence of the
agreement. (Franchise Agreement [Docket Item 12-1]; see generally
Pl.'s Opp'n to Dismiss [Docket Item 16]). The most pressing
question in consideration of Defendant's present motion to dismiss
is the second Trippe factor, whether the particular disputes — the

27

so-called "write-offs" or vendor negotiating practices claim —
fall within the scope of the arbitration agreement.

The arbitration clause contained within the Franchise
Agreement states: "**ANY AND ALL CLAIMS ARISING OUT OF OR RELATING
TO OUR OBLIGATIONS UNDER PARAGRAPHS 15(j) AND (k) OR THE REVIEW
CONDUCTED UNDER THIS EXHIBIT J WILL BE BARRED UNLESS AN ACTION IS
COMMENCED UNDER THESE DISPUTE RESOLUTION PROCEDURES....**"
(Franchise Agreement [Docket Item 12-1, Exhibit J], § D(1)
(emphasis in original).) Paragraph 15(j) of the Franchise
Agreement concerns vendor negotiating practices and treatments of
discounts and allowances and Paragraph 15(k) sets out procedures
for review and dispute resolution. (Id. at ¶¶ 15(j) & 15(k).)

When interpreting such language, the Third Circuit has
repeatedly given broad construction to phrases such as "arising
under" and "arising out of." Battaglia v. McKendry, 233 F.3d 720,
727 (3d Cir. 2000). This broad construction applies because "the
federal policy in favor of arbitration is 'particularly
applicable' where the arbitration clause at issue is
broad." Id. at 725. Considering the strong federal policy favoring
arbitration, provisions such as the present one must be "generously
construed" in favor of coverage. Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985); AT&T Techs.,
475 U.S. at 650 ("Doubts should be resolved in favor of coverage").

The main component of Plaintiff's claim is that Defendant's required products cannot be returned for credit if they are unsold, unlike other products he would purchase from other vendors, and he is therefore forced to write off the merchandise at a loss. He claims that this is not a vendor negotiation practices issue within the scope of the Franchise Agreement because Defendant is the vendor of these 7-Select products and cannot negotiate with itself. (Pl.'s Opp'n to Stay [Docket Item 15], 13-14.) However, manufacturers are explicitly included in Paragraph 15(j)(1) in the definition of "Vendor." (Franchise Agreement [Docket Item 12-1], ¶ 15(j)(1).) While it is unclear from the record who exactly manufactures these products, Defendant's requirement to make a "commercially reasonable effort to obtain the lowest cost for goods and services available from such Vendor" covers the return rights issue when a broad construction is given to the language of the agreement. Battaglia, 233 F.3d at 727.

Throughout his opposition brief, Plaintiff also attempts to distinguish Defendant's vendor negotiation practices and the resulting write-off. (Pl.'s Opp'n to Stay [Docket Item 15].) However, this distinction is purely semantic. He would prefer buying from vendors who allow returns of their unsold goods, while the manufacturers of Defendant's "7-Select" proprietary product line do not allow such returns of unsold goods, so he is forced to take a less advantageous "write-off." (Id. at 5.) This is a vendor

negotiating practices issue under Paragraph 15(j) of the Franchise Agreement, no matter what Plaintiff calls it. He is technically correct that these parts of the Franchise Agreement make no explicit reference to "write-offs," but even if this term introduces some doubt as to the scope of the arbitration agreement, the Supreme Court is clear that any doubts must be resolved in favor of arbitration. <u>Moses H. Cone</u>, 460 U.S. at 24-25; <u>AT&T Techs.</u>, 475 U.S. at 648.

Given the strong federal policy towards arbitration and the explicit inclusion of vendor and manufacturer negotiation issues in the Franchise Agreement, the vendor negotiating practices claims should be stayed pending arbitration.

## V.  ADMINISTRATIVE TERMINATION OF THE CASE

Having determined that some of Plaintiff's claims are subject to arbitration and some are not, the Court will exercise its discretion and administratively terminate this action pending the completion of arbitration.  In this Court's assessment, the arbitration proceeding will likely encompass issues that overlap with the remainder of the case and, as such, may facilitate the progression of the case (or perhaps settlement) in the long run. To ensure, however, that the case does not languish, Plaintiff shall provide status updates to the Court every sixty days and notify the Court when the arbitration proceeding has completed.

(The Court reserves the right to reopen this matter upon receipt of an update.)

## VI.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part, and Defendant's motion to stay arbitrable claims will be granted. The remaining non-arbitrable claims will be administratively terminated without prejudice pending the outcome of arbitration. The accompanying Order shall be entered.


Date: August 14, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
U.S. District Judge